UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DAVID L. SHAW, | ) | |
| Institutional ID No. 689847, | ) | |
| SID No. 3500127, | ) | |
| Previous TDCJ No. 608901, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:09-CV-222-BG |
| WARDEN TERRY TUCKER, | ) | ECF |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.      Procedural History**

Plaintiff David L. Shaw filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his incarceration by the Texas Department of Criminal Justice ("TDCJ"). The United States District Court referred the matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The transfer order directed that the case would be transferred back to the docket of the United States District Court if either Shaw or a defendant did not consent to proceed before this court. The court held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), and conducted preliminary screening as directed by 28 U.S.C. § 1915(e)(2). After considering Shaw's complaint, the testimony he provided at the *Spears* hearing, and authenticated records provided by TDCJ, the court determined that Shaw had stated claims that survived preliminary screening and entered an order for service. The order for service was entered on February 12, 2010, and the Defendants filed their answer on March 24, 2010. The Defendants were notified of their right to proceed before the United States Magistrate Judge on April 15, 2010. As of this date the Defendants have not consented to the jurisdiction of the

Magistrate Judge. The undersigned therefore files this Report and Recommendation.

## II. Shaw's Claims

Shaw names Chaplain Griffin, Bill Pierce, Brad Livingston, and Warden T. Tucker as Defendants. Shaw claims Defendant Griffin denied him the right to possess certain religious items and denied him the right to fast during Ramadan during his incarceration at the John T. Montford Unit ("Montford Unit") in 2007. He claims Defendant Pierce did not answer grievances to his satisfaction and failed to properly train Defendant Griffin; he points out that Defendant Tucker answered one of his grievances and faults him for failing to control his subordinates; and he claims Defendant Livingston failed to train and supervise his subordinates. In addition, Shaw alleges a violation of his right to access the courts.[1]

## III. First Amendment Claim

Shaw testified at the *Spears* hearing that Ramadan in 2007 began on September 13 and that he was denied the right to participate in the Ramadan fast from September 13, 2007, until he was discharged and transferred from the Montford Unit later that month. Shaw also claims that he was denied the right to possess "2 of 4 religious items" and that Chaplain Griffin authorized the denial of three other items. Shaw testified that he was not allowed to possess either a kufi cap or dhikr beads at anytime during his incarceration at the Montford Unit. He claimed he was allowed

---

[1] Shaw asserted the access to courts claim in his motion for leave to file an amended complaint that he filed on November 18, 2009. Shaw complains that he was forced to rely upon a "book system" after he was placed in transient status. Based on the allegations in Shaw's motion and his testimony at the *Spears* hearing, the actions Shaw complains of occurred at the Michael Unit in Tennessee Colony, Texas. The court should either dismiss or transfer the claim. A court may *sua sponte* order the dismissal of claims filed in the wrong forum or, in the interests of justice, transfer the claims to another district or division. 28 U.S.C. § 1406(a); *see also Caldwell v. Palmetto State Sav. Bank of South Carolina,* 811 F.2d 916, 919 (5th Cir. 1987). The court has broad discretion in determining whether to dismiss or transfer such claims. *See id.* (citations omitted). Because the events that gave rise to this claim occurred at the Michael Unit, the appropriate forum for the claim is the Eastern District of Texas, Tyler Division. http://www.txed.uscourts.gov/Directories/District information/Tyler/TylerInformation.htm. (Last visited on June 29, 2010) (stating that Tennessee Colony, Texas, is served by the Tyler Division).

2

to possess a prayer rug only and that he was not allowed to possess his own copy of the Koran.

An individual incarcerated in prison retains the protections provided by the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d. 282 (1987). However, the logistics of prison administration, including valid penological objectives such as deterrence of crime, rehabilitation of prisoners, and institutional security, impose limitations on many rights and privileges. *Id*. (citations omitted). When an individual alleges that a prison rule infringes upon his constitutional rights, the rule is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In short, a prison regulation is valid if there is a legitimate and neutral objective for the regulation at issue and the regulation is rationally related to the objective. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Turner*, 482 U.S. at 89). In order to make this determination, the court must consider: (1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question. *Turner,* 482 at 89-90; *see Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008) (applying the standard in *Turner* to a First Amendment right to free exercise claim).

The Fifth Circuit Court of Appeals applied the standard set forth in *Turner* to inmates' claims that TDCJ prison officials, among other things, refused to allow them to wear kufi caps outside of the prison chapel and their cells. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). The court considered evidence introduced at a hearing that TDCJ regulations prohibited inmates

3

from wearing kufi caps in the prison day rooms and other areas because inmates could hide weapons such as shanks and razor blades inside the caps. *Id.* at 902. Applying the standard in *Turner*, the court held, based on the evidence introduced at a hearing, that the prison's rule bore a reasonable relationship to the legitimate penological interest of prison security and noted that other circuits had reached the same conclusion.[2] *Id*. (citations omitted).

Without additional evidence in this case, the undersigned was without the means to determine why, as he has alleged, Shaw was denied the right to participate in Ramadan and to possess the religious items at issue. More specifically, the court was unable to determine whether the decision to deny Shaw the right to participate in Ramadan and to possess the religious items was rationally related to a legitimate and neutral objective; whether there were alternative means available for Shaw to exercise his rights; or the impact allowing an accommodation for Shaw would have upon prison guards, inmates, and prison resources; or whether there were alternative accommodations available to address the situation. Such determinations may be made in a later stage of the litigation. The undersigned therefore recommends that the District Court enter a scheduling order.

**IV.     Remaining Claims**

The directives of Section 1915(e)(2) require the court to dismiss an *in forma pauperis* claim if it is determined that the claim is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (emphasis added). Shaw filed his complaint *in forma pauperis*, and his claims against

---

[2] On the other hand, in *Mayfield,* 529 U.S. at 611, the plaintiff, who was arguing for his right to possess runestones, presented evidence that Muslim inmates incarcerated by TDCJ are allowed to possess a prayer rug, a kufi cap, and prayer beads.

Defendants Pierce, Livingston, and Tucker should be dismissed as frivolous pursuant to Section 1915(e)(2).

Shaw's claims about the manner in which Defendants Pierce and Tucker responded to his grievances are frivolous. The primary purpose of an inmate grievance system is to alert and provide facility administration with a fair opportunity to address problems that may later form the basis of a lawsuit. *See Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (discussing purpose of grievances in context of the exhaustion requirements set forth under 42 U.S.C. § 1997e(a)). There is no constitutional requirement that jail officials address an inmate's grievances in a certain manner; an inmate does not have a "federally protected liberty interest in having [his] grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). "[A] prisoner has a liberty interest only in 'freedoms from restraint . . . impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995)).

Shaw's claim that Defendant Pierce failed to properly train Chaplain Griffin and his claim that Defendants Livingston and Tucker failed to train and supervise their subordinates is likewise frivolous. Section 1983 does not provide a basis for a cause of action against supervisory officials based upon the conduct of subordinates. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action"). Liability cannot be imposed in a Section 1983 case against a defendant via a theory of *respondeat superior*. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In a case with allegations such as those Shaw has asserted, liability may be imposed upon the supervisor only if (1) he failed to train or supervise the officers involved in the alleged constitutional violation; (2) there is a causal connection

5

between the supervisor's wrongful conduct and the constitutional violation; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Id.* at 304. Shaw did not demonstrate the foregoing in his complaint or at the *Spears* hearing. Shaw's allegation that Pierce failed to properly instruct Chaplain Griffin; his allegation that Tucker is the Warden "over him"; and his allegation that Livingston is "over day to day operations" of the prison do not demonstrate personal responsibility on the part of Defendants Pierce, Tucker, and Livingston. *See id.*

## V.  Recommendation

For the foregoing reasons, the undersigned recommends that the District Court:

(1) Dismiss pursuant to 28 U.S.C. § 1406(a) the claims Shaw asserts against officials at the Michael Unit;

(2) Dismiss pursuant to 28 U.S.C. § 1915(e)(2) the claims Shaw asserts against Defendants Pierce, Tucker, and Livingston; and

(3) Enter a scheduling order as to Shaw's claims against Defendant Griffin.

## VI.  Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from

appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     July 2, 2010.

_____
NANCY M. KOENIG
United States Magistrate Judge